428 S.E.2d 317

**Danny G. BECKLEY, Plaintiff Below, Appellee,**

v.

**Bernie R. CRABTREE, Sheriff of Wayne County, and the Wayne County Commission, Defendants Below, Appellants.**

**No. 21353.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1993.

Decided Feb. 24, 1993.

---

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, for appellee.

R. Carter Elkins and Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for the appellants.

BROTHERTON, Justice:

On October 15, 1989, Trooper Danny G. Beckley, a member of the West Virginia Department of Public Safety, assisted the Sheriff of Wayne County, Bernie R. Crabtree, and other Wayne County deputy sheriffs who arrested Thomas Wayne Graham on charges of brandishing a weapon and discharge of a firearm. After Graham was placed in the back seat of a sheriff's department vehicle, Sheriff Crabtree attempted to place a shotgun in the trunk of the car, and the shotgun accidentally discharged, injuring Trooper Beckley.[1]

Trooper Beckley filed suit against Sheriff Crabtree in the Circuit Court of Wayne County on September 10, 1991. In his complaint, Beckley alleged that Crabtree's negligent handling of the shotgun caused it to accidentally discharge and injure Beckley. Sheriff Crabtree denied negligence and moved for summary judgment on the grounds that he was an employee of a political subdivision—the Wayne County Commission—and, as such, was immune from tort liability under provisions of the Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1, *et seq.* The circuit court denied the Sheriff's motion for summary judgment.

Trooper Beckley moved for leave to amend his complaint on May 1, 1992. He then added a second count naming the Wayne County Commission as an additional defendant. Trooper Beckley alleged that Sheriff Crabtree was an employee of the Wayne County Commission within the meaning of W.Va.Code § 29–12A–3(a), and the Wayne County Commission was therefore liable for damages for injuries caused by the Sheriff's negligence pursuant to W.Va.Code § 29–12A–4(c).

The Circuit Court of Wayne County certified the following questions to this Court, pursuant to W.Va.Code § 58–5–2 and Rule 13 of the West Virginia Rules of Appellate Procedure:

Can the defendant, Bernie R. Crabtree, the duly elected and serving Sheriff of Wayne County, be liable when sued in

---

1. According to the appellant's brief, "Trooper Beckley apparently was hit with some shell fragments and allegedly injured his shoulder in an attempt to avoid the shotgun blast."

his official capacity for his actions as Sheriff of Wayne County for alleged negligence in the discharge of a shotgun while acting in his capacity as Sheriff of Wayne County, West Virginia under the provisions of West Virginia Code § 29–12A–5(b)?

Can the Wayne County Commission be held liable under the provisions of West Virginia Code § 29–12A–4(c) for the alleged negligence of its employee, the defendant, Bernie R. Crabtree, the duly elected and serving Sheriff of Wayne County, West Virginia, for Crabtree's actions as Sheriff of Wayne County, West Virginia, or does West Virginia Code § 29–12A–5(a) provide immunity to the Wayne County Commission when liability is sought to be imposed based upon the actions of the duly elected and serving Sheriff of Wayne County?

The circuit court answered both questions in the affirmative.

The appellants, Sheriff Crabtree and the Wayne County Commission, now argue that the sheriff is entitled to immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1, *et seq.*, either as an employee of a political subdivision or as a separate political subdivision.

■■■ We agree with the appellants' contention that Sheriff Crabtree is immune from personal tort liability because he is an employee of the Wayne County Commission, which is a political subdivision. West Virginia Code § 29–12A–3(c) (1992) defines a political subdivision as follows:

[A]ny county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two [§ 16–2–1 et seq.], chapter sixteen of this code; public service dis-

tricts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

West Virginia Code § 29–12A–3(a) states that an employee is:

[A]n officer, agent, employee, or servant, whether compensated or not, whether full-time or not, who is authorized to act and is acting within the scope of his or her employment for a political subdivision. *"Employee" includes any elected or appointed official of a political subdivision.* "Employee" does not include an independent contractor of a political subdivision. (Emphasis added.)

Finally, W.Va.Code § 29–12A–5(b) provides that employees of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code."

None of the three exceptions in W.Va. Code § 29–12A–5(b) which would impose personal liability upon the sheriff are applicable in this case. The sheriff's actions in effectuating the arrest of a criminal suspect were clearly within the scope of his employment. Moreover, there is no indication that the sheriff committed any acts with malicious purpose, in bad faith, or in a wanton or reckless manner. No other statutory provision would impose liability upon Sheriff Crabtree.

In response to the second certified question, the appellants argue that because the Wayne County Commission is a political subdivision, it is also immune from liability. West Virginia Code § 29–12A–5(a)(5) provides that "[a] political subdivision is immune from liability if a loss or claim re-

sults from: Civil disobedience, riot, insurrection or rebellion or the failure to provide, *or the method of providing, police, law enforcement or fire protection.*" The appellants maintain that Sheriff Crabtree was engaged in a method of providing law enforcement protection when the October 15, 1989, accident occurred, and thus the political subdivision is immune from liability.

The appellee disagrees and maintains that this is a simple negligence claim, and he alleges that the Sheriff was negligent in the handling of the shotgun. The appellee further states that the West Virginia Governmental Tort Claims and Insurance Reform Act clearly imposes liability in situations involving the negligence of employees acting within the scope of their employment. West Virginia Code § 29–12A–4(c)(2) provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment."

The appellee correctly argues that W.Va. Code § 29–12A–4(c)(2) would impose liability upon the Wayne County Commission for the negligence, if any, of its employee, Sheriff Crabtree. However, because it is a political subdivision, the Wayne County Commission would be immune from liability if Trooper Beckley's injury resulted from "the method of providing police, law enforcement or fire protection." W.Va. Code § 29–12A–5(a)(5). Thus, a separate question exists which relates to the "method" of providing such law enforcement protection.

In *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737 (1991), this Court addressed the alleged failure to provide adequate police protection. Although W.Va.Code § 29–12A–5(a) was discussed in *Randall*, we have not had the occasion to define the phrase "the method of providing police, law enforcement, or fire protection." We note, however-

er, that 6252–19, § 14 of the Texas Tort Claims Act is similar to our § 29–12A–5(a),[2] and appeals courts in Texas have addressed this issue on several occasions.

In a leading case, *State v. Terrell*, 588 S.W.2d 784, 787 (1979), the Supreme Court of Texas stated that "[t]he clause exempting governments from liability for injuries arising out of the failure to provide police or fire protection is clearly designed to avoid judicial review of the policy decisions that governments must make in deciding how much, if any, police or fire protection to provide for a community." The state argued that the clause was a general exclusion for any act or omission that occurs while an officer is providing police or fire protection to the public. However, the Court did not believe that the Legislature intended to create an exclusion so broad that it excluded liability for any act occurring while an officer provides police protection. *Id.*

While defining the phrase "the method of providing police or fire protection," the Supreme Court of Texas stated:

> The term "method" is defined as "a procedure or process for attaining an object" and as an "orderly arrangement, development or classification." Webster's Third New International Dictionary 1422–23 (1966). The term is synonymous with the words "mode," "plan," "design," or "system." *Id.* Thus, the "method" of performing an act refers to the *decision* or *plan* as to how the act is to be performed. Similarly, the "method of providing police or fire protection" refers to the governmental decisions as to how to provide police or fire protection.

*Id.* at 788. *Terrell* involved the Texas Highway Department's policy of detecting and apprehending motorists who exceed the speed limit by use of radar and motor vehicles, pursuant to a statute fixing maximum speeds. The Supreme Court of Texas stated:

---

**2.** Section 14 of the Texas Tort Claims Act provides: "The provisions of this Act shall not apply to ... (a) Any claim based on an injury or

death connected with any act or omissions arising out of ... the method of providing police ... protection."

Such a policy decision is not subject to an attack of negligence under this Act. This policy, however, obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder. The accident which occurred in this case was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with Mr. Terrell's vehicle.

*Id.*

The Court concluded that the Legislature "intended to exclude from the [Texas Tort Claims] Act only those acts or omissions which constitute the execution of or the actual making of those policy decisions." *Id.* Further, the Court stated that, "if the negligence causing an injury lies in the formulating of policy—i.e., the determining of the *method* of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act." *Id.*

▪ We agree with the reasoning in *Terrell* and believe that this type of analysis is applicable to the facts now before us. The phrase "the method of providing police, law enforcement or fire protection" contained in W.Va.Code § 29–12A–5(a)(5) refers to the formulation and implementation of policy related to how police, law enforcement or fire protection should be provided. Resolution of the issue of whether a loss or claim occurs as a result of the method of providing law enforcement protection requires determining whether the allegedly negligent act resulted from the manner in which a formulated policy regarding such protection was implemented.

▪ In this case, Trooper Beckley's injury did not result from the implementation of a formulated policy. The methods employed by the law enforcement officers who detained and arrested the suspect were complete before the gun discharged. Sheriff Crabtree was simply returning a shotgun to the trunk of the car when the accident occurred. Although this incidental action occurred within the scope of employment, it was not so closely related or necessary to effectuating the arrest as to be considered a component of "the method of providing law enforcement protection."

Thus, to summarize our conclusions, we find that a sheriff is an employee of a political subdivision, the county commission, and is therefore immune from personal tort liability for acts committed within the scope of employment, unless one of the exceptions noted in W.Va.Code § 29–12A–5(b) is applicable. In this case, W.Va.Code § 29–12A–5(b) would not impose personal liability upon Sheriff Crabtree for the alleged negligent discharge of a shotgun which occurred while he was acting in his official capacity as the Sheriff of Wayne County. Thus, the answer to the first certified question is "no."

However, our response to the second certified question is "yes." The Wayne County Commission can be held liable for injuries arising out of the negligence, if any, of its employee, Sheriff Crabtree, if such negligence occurred while he was performing duties within the scope of his employment as Sheriff of Wayne County. West Virginia Code § 29–12A–5(a) provides immunity from tort liability to the Wayne County Commission only under certain limited circumstances which are not present in this case, i.e., if the loss or claim results from "civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection."

Having answered the questions certified by the Circuit Court of Wayne County, this case is ordered dismissed from the docket of this Court.

Certified Questions Answered.