1997 OK 92

**Christine SCHMIDT, a/k/a Christine Morris, Plaintiff,**

**v.**

**GRADY COUNTY, OKLAHOMA, a political subdivision, and Terry Cunningham, individually and as Deputy Sheriff of Grady County, Oklahoma, Defendants.**

No. 86549.

Supreme Court of Oklahoma.

July 8, 1997.

A. David Necco, Bradley P. Bonsall, Necco & Byrd, Oklahoma City, for Plaintiff.

Michael R. Chaffin, Huckaby, Fleming, Frailey, Chaffin, Cordell, Greenwood & Perryman, Chickasha, W.A. Drew Edmondson, Attorney General of Oklahoma, Bejamin Gore Gaines, Assistant Attorney General, Oklahoma City, for Defendants.

HODGES, Justice.

¶ 1 We are presented with a question certified from the United States District Court for the Western District of Oklahoma, pursuant to the Uniform Certification of Questions of Law Act, Okla.Stat. tit. 20, §§ 1601–11 (1991), to wit:

> Does Section 155(6) of Title 51 of the Oklahoma Statutes immunize a political subdivision from liability for damages for personal injuries an individual sustained as a result of a negligent act or omission of the political subdivision's law enforcement personnel while acting within the scope of their employment in taking the individual into protective custody and transporting her to county jail?

We answer in the affirmative.

## I. Facts

¶ 2 The parties stipulated to the following facts. Defendant Grady County is a political subdivision of the State of Oklahoma under section 152 of the Governmental Tort Claims Act, Okla.Stat. tit. 51, §§ 151–72 (1991). Defendant Terry Cunningham was employed as Deputy Sheriff of Grady County. While acting within the scope and during the course of his employment as deputy sheriff, Cunningham took the plaintiff, Christine Schmidt, into custody to protect her from harming herself or others and from being harmed by others. Cunningham placed Schmidt in the front seat of his patrol vehicle but did not place her in any type of restraint, such as handcuffs or a seatbelt. While being transported to the Grady County Sheriff's Department by Cunningham, Schmidt was injured

when she either jumped or fell from Cunningham's patrol vehicle.

¶ 3 Schmidt brought suit in federal court for the Western District of Oklahoma against Grady County and Terry Cunningham. Schmidt alleged violations of her civil rights. She also alleged that her injuries were caused by the negligence of the defendants. Grady County sought immunity from suit. United States District Judge David L. Russell certified the question of immunity to this Court.

## II. History of the doctrine of sovereign immunity

¶ 4 Under the common law, the doctrine of sovereign immunity protected states from suit. *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, 1154. The doctrine evolved so that states were protected from suit when acting in a governmental capacity but not immune when acting in its propriety function. *Id.* As it became more difficult to differentiate between governmental and propriety functions, courts and legislatures began to retreat from the distinction. *Id.* 672 P.2d at 1155.

¶ 5 In 1978, the Oklahoma Legislature enacted the Political Subdivision Tort Claims Act, Okla.Stat. tit. 51, §§ 151–69 (Supp.1978). The Political Subdivision Tort Claims Act made political subdivisions of the state "liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment or duties subject to the limitations specified in [the] act." *Id.* at § 153. Sections 155 of the Political Subdivision Tort Claims Act provided for exemptions to liability including losses resulting from "the method of providing police or fire protection." *Id.* at 155(6).

¶ 6 In 1983, this Court in *Vanderpool*, abolished the governmental-propriety dichotomy. The finding set forth in *Vanderpool* was that the state and its political subdivisions are liable for losses caused by the torts of their employees acting within the scope of their employment in circumstances such that a private entity would be liable. *Vanderpool*, 672 P.2d at 1153. This Court also noted that it was the Oklahoma Legislature's function to place limitations on the liability of the state and its political subdivisions. *Id.* at 1157.

¶ 7 In 1984, the Oklahoma Legislature adopted the Governmental Tort Claim Act with an effective date of October 1, 1985. The Governmental Tort Claim Act provided the State of Oklahoma with immunity in situations similar to what the Political Subdivision Tort Claims Act provided the State's municipalities and counties with immunity. *See id.* at § 155 (1981 & 1991). Like the Political Subdivision Tort Claims Act, the Governmental Tort Claims Act exempted losses resulting from "the method of providing police, law enforcement [and] fire protection." *Id.* at § 155(6) (1991).

## III. Application of subsection 155(6) of the Governmental Tort Claims Act

¶ 8 The defendant, Grady County, claims immunity from liability pursuant to title 51, subsection 155(6) of the Oklahoma Statutes. This subsection of the Oklahoma Governmental Tort Claims Act affords the state or a political subdivision immunity for "the method of providing police, law enforcement or fire protection." Okla.Stat. tit. 51, § 155(6) (1991). The county argues that subsection 155(6) provides complete immunity from suit for any negligence of its employees when carrying out their duties. The plaintiff argues subsection 155(6) should be limited to decisions regarding how police protection should be provided.

¶ 9 We reject both the county's and the plaintiff's proposed interpretation of subsection 155(6). As to the county's argument, we refuse to read the Governmental Tort Claims Act so broadly. However, we have held that a municipality is not liable for the acts of its employees who act outside the scope of their employment. *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914.

¶ 10 Plaintiff relies on the decisions of courts in Kansas, Texas, and West Virginia who have interpreted exemptions that are similar or identical to the exemption contained in subsection 155(6). These courts have extended governmental immunity only to policy choices of police or fire departments. Under this approach, the govern-

ment is immune only for decisions regarding such matters as the number and type of police cars considered necessary for operation of city police departments, where such patrol cars are to operate, and how law enforcement officials are trained and equipped. *See Jackson v. City of Kansas City,* 235 Kan. 278, 680 P.2d 877 (1984); *State v. Terrell,* 588 S.W.2d 784 (Tex.1979); *Beckley v. Crabtree,* 189 W.Va. 94, 428 S.E.2d 317 (1993). We reject this construction. To limit section 155(6) to policy decisions would render it meaningless since subsection 155(5) provides immunity for policy decisions. *Nguyen v. State,* 1990 OK 21, 788 P.2d 962, 964–65.

¶ 11 Except that subsection 155(6) of the Governmental Tort Claim Act applies to the state, it is identical to subsection 155(6) of the Political Subdivision Tort Claim Act. In *Shockey v. City of Oklahoma City,* 1981 OK 94, 632 P.2d 406, this Court applied subsection 155(6) of the Political Subdivision Tort Claim Act in the context of fire protection. In *Shockey* the plaintiffs' home and furnishings were destroyed by fire. The fire-fighting efforts were delayed due to the lack of water from the fire hydrant serving the area. The plaintiffs claimed that the defendant negligently failed to properly maintain the fire hydrant or warn of its nonoperational and defective state and negligently failed to provide back-up equipment in case the hydrant failed.

¶ 12 In *Shockey,* the relationship to the plaintiffs was as a municipality carrying out a fire protection function. Thus, the losses were a result of the municipality's method of providing fire protection. This Court held because the loss resulted from the method of providing fire protection, the defendant was immune from suit. *Id.* 632 P.2d at 408.

¶ 13 Similar to *Shockey,* in the facts presented to this Court, the Grady County deputy sheriff was acting as a police officer in relation to the plaintiff. The deputy was providing police protection to the plaintiff and public when she jumped or fell from the patrol car. Thus any injury suffered by the plaintiff was a result of the county's method of providing police protection making the county immune from suit.

¶ 14 In contrast, when an innocent bystander's injuries are a result of the negligence of a police officer, the officer is acting as the driver of a vehicle, just as any other operator of a vehicle, in relation to the bystander. Because the officer would not be involved in the method of providing police protection, the governmental entity would not be immune and could be liable for the negligent acts of the officer acting within the scope of his employment.

¶ 15 We hold subsection 155(6) provides immunity for a political subdivision for liability for personal injuries resulting from the acts of its employees acting within the scope of their employment in taking into protective custody and transporting a person to the county jail. Accordingly, the federal court's certified question is answered in the affirmative.

CERTIFIED QUESTION ANSWERED.

¶ 16 HODGES, HARGRAVE, OPALA, ALMA WILSON and WATT, JJ., concur.

¶ 17 KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER and SIMMS, JJ., dissent.

SUMMERS, Vice Chief Justice, dissenting, with whom KAUGER, Chief Justice, LAVENDER and SIMMS, Justices, join.

¶ 1 This dissenting opinion should not be read to infer that the county should be liable for its deputy's acts in this case. It may well be that Deputy Cunningham did nothing negligent. But the federal court's certified question to us assumed the presence of negligence. In saving the County from liability the Court today has unnecessarily stretched the meaning of the words creating immunity for a governmental entity in its method of providing police and fire protection.

¶ 2 The immunity relied on by the majority, found at 51 O.S.1991 § 155(6), is in an action for injury as result of:

6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, *or the method of providing* police, law enforcement or fire protection (emphasis added)

No other state with language like our section 155(6) has held as the Court does here.

Four states have language in their Governmental Tort Claims Acts very similar to that we have in Oklahoma: Texas, Kansas, West Virginia and Georgia. Of those states three have interpreted the clause. All three have held that "method of providing" does not include all actions of police or firefighters, but applies only to policy decisions made by a governmental unit in charge of providing such protection. *State v. Terrell,* 588 S.W.2d 784, 788 (Tex.1979); *Beckley v. Crabtree,* 189 W.Va. 94, 428 S.E.2d 317 (1993); *Jackson v. City of Kansas City,* 235 Kan. 278, 680 P.2d 877, 888 (1984). In fact, in reaching this conclusion, the Kansas Supreme Court relied heavily on an Oklahoma case, *Shockey v. City of Oklahoma City,* 632 P.2d 406 (Okla.1981). In *Shockey,* the plaintiffs sued the city for negligently failing to maintain water to a fire hydrant which resulted in the fire loss of their home. We held that the supplying of water through fire hydrants was part of the method chosen by city officials to fight fires, and thus fell with the exception.

¶ 3 When speaking of "methods" of providing fire or police protection, states have not looked to the actions of the individual officer or firefighter. Rather, when defining "method of providing fire protection," North Carolina and Indiana have explained that this includes such things as levying taxes to raise funds to provide protection, contracting with incorporated cities or towns for protection, or by providing firefighting services through itself. N.C.Stat. § 69–25.5; Ind.Stat. § 36–8–13–3. The Kansas Court explained:

> We believe subsection (m) is aimed at such basic matters as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments; how many personnel might be required; how many and where police patrol cars are to operate; the placement and supply of fire hydrants; and the selection of equipment options. Accordingly, a city is immunized from such claims as a burglary could have been prevented if additional police cars had been on patrol, or a house could have been saved if more or

better fire equipment had been purchased. We do not believe subsection (m) is so broad as to immunize a city on every aspect of negligent police and fire department operations. Should firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection. *Jackson, supra,* 680 P.2d at 889.

No other state has included within its "method" of providing protection immunity from suits such as the one at bar.

¶ 4 The interpretation adopted by the majority leaves vacant the arena in which a governmental entity should be accountable for negligent acts of police or fire fighters. Under the guise of avoiding an interpretation which would render meaningless the exemption which protects discretionary decisions [1], the majority fails to pay heed to the purpose of the Act: Sovereign immunity is waived for torts of employees unless specifically exempted. 51 O.S.1991 § 153(A). In other words, liability is supposed to be the rule, while immunity is the exception. *Jackson, supra* at 886. Our Court seems to have it the other way around. I respectfully dissent.

---

1. The states which have adopted the interpretation I urge today also have exemptions dealing with discretionary decisions, but have not concluded that by interpreting "method" of providing police or fire protection to include only policy decisions they render meaningless the "discretionary act" exemption.