2006 OK CIV APP 114

**Timofei KRUZHKOV, Plaintiff/Appellant,**

v.

**STATE of Oklahoma, OHP Trooper Mark Warren, and David Whitaker, Defendants/Appellees.**

**No. 101,852.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 16, 2006.

Certiorari Denied Sept. 18, 2006.

---

23. *Shirley* was decided September 17, 2004, and mandated December 21, 2004.

Bill M. Shaw, Claremore, OK, For Plaintiff/Appellant.

Sherry A. Todd, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, OK, for Defendants/Appellees.

Opinion by DOUG GABBARD II, Presiding Judge.

¶1 Plaintiff, Timofei Kruzhkov, appeals the granting of a directed verdict against him and in favor of Defendants, the State of Oklahoma, Oklahoma Highway Patrol Troop-

er Mark Warren, and David Whitaker. For the following reasons, we affirm.

## FACTS

¶ 2 In the early morning hours of November 1, 2001, Trooper Warren observed a vehicle traveling too fast to negotiate the exit ramp at U.S. Highway 169 and 41st street in Tulsa. Trooper Warren pulled the vehicle over near a Citgo station on South 129th E. Avenue. The car contained Kruzhkov, who was driving, and a passenger. Trooper Warren approached the vehicle and asked Kruzhkov for his driver's license. He then smelled an odor of alcohol coming from the vehicle, asked Kruzhkov to step out, and, as he did so, observed two open containers of Budweiser beer in the vehicle.

¶ 3 Trooper Warren asked Kruzhkov if he had been drinking, and Kruzhkov said yes, he had just come from a party where he had had a few beers. Trooper Warren administered a field sobriety test and determined that Kruzhkov was not intoxicated. However, Trooper Warren informed Kruzhkov that since he was under 21 years old, he could be arrested for DUI if he had any measurable amount of alcohol in his bloodstream. Kruzhkov said that he understood, but begged the officer not to arrest him. He stated that he and his friend "were just having a good time," that he was OK to drive, that he was a student at Spartan School and might lose his status, and that he didn't want to be arrested. Trooper Warren ran his record and determined that Kruzhkov had no previous arrests or citations.

¶ 4 Kruzhkov kept asking if he could park his vehicle and call for a ride. Since Kruzhkov was under 18, did not appear to be intoxicated, and had no prior arrests, and since his passenger appeared to be in the same condition he was in, Trooper Warren finally agreed. A restaurant was located approximately 400 feet west of their location. Trooper Warren testified:

> And I gave him instructions to walk to the restaurant, stay there, call for a ride, don't come back and get your vehicle. He said he wouldn't. He thanked me, he was very appreciative of it. As he parked his car in the parking lot, I talked to the

passenger, gave him the same instructions. The passenger was very appreciative, thanked him and explained to him, go to the restaurant, wait for a ride, and they both agreed they would.

In addition to the phone in the restaurant, there were also phones in an adjacent parking lot. Furthermore, Trooper Warren testified that Kruzhkov told him:

> [H]e had a cell phone with him and he said he had someone to call and—and—one of the things that we conversed about was I didn't want him calling someone that had been to the same party he was and be in the same shape he was, and he—he explained to me that he had someone to call that was sober, that could come get him and his passenger and everything would have been fine.

Trooper Warren then gave Kruzhkov citations for Driving in a Manner Not Reasonable and Proper and Transporting an Open Container of Beer. The traffic stop lasted approximately 15–20 minutes.

¶ 5 Approximately 15–20 minutes later, Kruzhkov was hit by a drunk driver while walking on 41st Street about one mile from where the traffic stop occurred. He sustained serious injuries and was hospitalized for months. He has no memory of the event in question except that he remembered seeing a phone and possibly calling someone. His passenger did not testify at trial. However, Kruzhkov's attorney contends that his client was struck by the vehicle while walking home.

¶ 6 Kruzhkov filed a negligence lawsuit. The trial court sustained the State's motion for a directed verdict on the grounds that the State could not be liable for an exercise of discretion by one of its employees. Kruzhkov appeals.

## STANDARD OF REVIEW

¶ 7 In order to grant a directed verdict, the trial court must consider as true all evidence favorable to the plaintiff and disregard all conflicting evidence favorable to the defendant. *Ford Motor Credit Co. v. Goings,* 1974 OK CIV APP 28, 527 P.2d 603.

An appellate court's standard of review of a trial court's grant of a directed verdict is *de novo*. *Cline v. Daimler Chrysler Co.*, 2005 OK CIV APP 31, 114 P.3d 468.

## ANALYSIS

¶ 8 On appeal, Kruzhkov alleges that his suit was sustainable as either a federal § 1983 claim or a state tort claim. He argues that the trial court erred for two reasons: First, he proved a prima facie case under 42 U.S.C. § 1983 (2006) by demonstrating that Trooper Warren had been grossly negligent or deliberately indifferent to his rights by ordering him to park his vehicle and walk, knowing that his intoxicated condition would place him in danger from traffic. Second, Trooper Warren's actions constituted actionable gross negligence or deliberate indifference under state law and that Defendants were not immune from liability under the Governmental Tort Claims Act.

### 1. *The § 1983 Claim*

¶ 9 The Fourteenth Amendment to the U.S. Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." Congress later created a federal cause of action in 42 U.S.C. § 1983 for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

¶ 10 To maintain a § 1983 action, a plaintiff must show: 1) that the conduct deprived plaintiff of a federal constitutional or statutory right, and 2) that the conduct complained of was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). In this case, it is not disputed that Trooper Warren was acting under color of state law when he stopped Kruzhkov's vehicle and decided not to arrest him on condition that he park his vehicle and walk to a phone. The issue is whether he deprived Kruzhkov of a federal right by recklessly, or with deliberate indifference, exposing him to obvious danger. Most of the *cases that have raised these issues have been "undeniably tragic." See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 191, 109 S.Ct. 998, 1001, 103 L.Ed.2d 249

(1989), which is discussed below. Nevertheless, the U.S. Supreme Court has consistently found that the Due Process Clause does not generally authorize a right of action against police officers and other state officials for failing to protect an individual from danger.

¶ 11 In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677, (1986), the U.S. Supreme Court held that mere negligence or lack of due care by state officials does not trigger Fourteenth Amendment protection sufficient to state a claim under § 1983. However, the Court left open the question of "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels* at n. 3.

¶ 12 The Court resolved that question a few years later in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In that case, local child protection officials failed to protect a young boy from beatings by his father that left him severely brain-damaged. In resolving a § 1983 suit on behalf of the boy, the Supreme Court held that since due process does not require a state to provide its citizens with protection (citing *Daniels* and *Davidson*), it follows that a state is not liable under the Due Process Clause for injuries that could have been averted had it chosen to provide them. The Court stated that, as a general matter, a state's failure to protect an individual against private violence simply does not constitute a violation of *substantive* due process because that clause does not impose any affirmative duty on it to provide the public with protection even when the State knows that a specific person faces a special danger, has promised to protect him or her, and fails to do so:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*Id.* at 489 U.S. at 200, 109 S.Ct. at 1005–6.

¶ 13 In other words, substantive due process only imposes upon a state the

duty to protect those persons who are in actual custody. *See also Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir.1988). In this case, Kruzhkov was not in custody and, therefore, could not maintain a substantive due process claim under § 1983.[1]

¶ 14 The issue of whether such a claim could be sustained under *procedural* due Process was decided last year in *Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). In that case, the plaintiff made repeated reports to police officers over several hours that her estranged husband had taken their children in violation of a restraining order and that he might harm them. Ultimately, he did. The plaintiff sued, and the U.S. District Court granted the town's motion to dismiss. An en banc majority of the Tenth Circuit reversed, finding that the plaintiff had a cognizable procedural due process claim because Colorado law *required* police officers to enforce such restraining orders, and that this entitlement to enforcement constituted a property interest protected by the Fourteenth Amendment.

¶ 15 On certiorari, the Supreme Court disagreed. Citing *Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), it noted that police officers have great discretion in enforcing laws, even when those laws contain seemingly mandatory language, because it is "common sense that *all* police officers must use some discretion in deciding when and where to enforce city ordinances." *Gonzales* at 125 S.Ct. at 2806. It also noted that even mandatory arrest laws usually do not remove a prosecutor's discretion to file charges. The Court concluded that, generally, there was no mandatory duty to arrest and, therefore, no entitlement which could constitute a property interest protected by procedural due process.[2]

¶ 16 Although *Gonzalez* involved a § 1983 claim by a third party who claimed a government "benefit" from having someone else arrested for a crime, its holding and analysis are applicable. In this case, an examination of 47 O.S.2001 § 11–906.4, the Oklahoma statute providing for the arrest of those under age 21 with any appreciable amount of alcohol in their bloodstream, indicates no intent to remove a law enforcement officer's discretion to arrest.[3] For this reason, Kruzhkov cannot maintain a procedural due process claim under § 1983.

¶ 17 Accordingly, because Kruzhkov has failed to establish a claim under either procedural or substantive due process, and has

1. Kruzhkov cites and relies upon *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), decided a few months after *DeShaney* by the Ninth Circuit, which authorized suit where an officer's conduct was so grossly negligent and deliberately indifferent that it "shocked the conscience." There, the officer arrested a drunk driver, impounded his vehicle, and left Wood, the passenger, on foot in a dangerous neighborhood, where she was subsequently raped by strangers. The Ninth Circuit distinguished *DeShaney* by relying on language in the case that the State "played no part" in creating the dangers that the minor child faced by remaining in his father's custody, nor did the State do anything to render the child any more vulnerable. *Wood* at 590. However, this was not the holding in *DeShaney.* As the dissenting opinion in *Wood* noted, the quoted language was not decisive to *DeShaney* because there the State had, in fact, **returned the child to his father's care with knowledge of the father's abusive character.** More importantly, the *DeShaney* Court held that the State was not liable because "these circumstances were not sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *Wood* at 600 (J. Carroll, dissenting). Thus, we do not find *Wood* controlling.

2. The majority noted, however, that states were free to craft statutes which made the enforcement of laws mandatory. Several states have done so in the area of domestic violence.

3. Title 47 O.S.2001 § 11–906.4 provides, in part:

   A. It is unlawful, and punishable as provided in subsection B of this section, for any person under twenty-one (21) years of age to drive, operate, or be in actual physical control of a motor vehicle within this state who:

   1. Has any measurable quantity of alcohol in the person's blood or breath at the time of a test administered within two (2) hours after an arrest of the person;

   2. Exhibits evidence of being under the influence of any other intoxicating substance as shown by analysis of a specimen of the person's blood, breath, saliva, or urine in accordance with the provisions of Sections 752 and 759 of this title; or

   3. Exhibits evidence of the combined influence of alcohol and any other intoxicating substance.

failed to claim or demonstrate the deprivation of any other constitutional or legal right, his first proposition fails.

### 2. *The State Negligence Claim and Immunity*

¶ 18 In his second proposition, Kruzhkov claims that he has stated a cause of action under state law for negligence which is not barred by the Governmental Tort Claims Act, 51 O.S.2001 & Supp.2005 §§ 151–172. In Oklahoma, governmental immunity of the state and its political subdivisions is waived only to the extent and in the manner provided by that Act. The Act sets forth specific exemptions from liability in Section 155, including:

5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees.

6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection[.]

¶ 19 In *Schmidt v. Grady County, Oklahoma,* 1997 OK 92, 943 P.2d 595, Grady County claimed immunity from suit in a federal negligence action which arose when a prisoner being transported to jail by a County Deputy Sheriff either jumped or fell from the deputy's vehicle. In answering a certified question, the Oklahoma Supreme Court noted that the four states with similar statutes had held that the immunity provided by Subsection 6 of the Act only applied to policy decisions, not to the actions of individual firefighters and police officers. However, it noted that such a narrow construction would be meaningless since *policy* decisions were already protected by Subsection 5. The Court held that the protection granted by Subsection 6 applied to the *individual actions* of police officers, that the deputy was providing police protection to the plaintiff and the public when the plaintiff was injured, and, therefore, the county was immune from suit. It also stated:

In contrast, when an innocent bystander's injuries are the result of the negligence of a police officer, the officer is acting as the driver of a vehicle, just as

any other operator of a vehicle, in relation to the bystander. Because the officer would not be involved in the method of providing police protection, the governmental entity would not be immune and could be liable for the negligent acts of the officer acting within the scope of his employment.

*Id.* at ¶ 14, 943 P.2d at 598.

¶ 20 In *Vaughn v. City of Tulsa,* 1999 OK CIV APP 9, 974 P.2d 188, the Court of Civil Appeals affirmed the grant of summary judgment in favor of the City of Tulsa in a suit by occupants of a motor vehicle which was struck by an escaping arrestee whom city police officers had negligently placed in a police car with the keys in the ignition. Relying on *Schmidt,* we held that the attempted escape occurred because of the method of providing law enforcement and, therefore, the City was immune under Subsection 6 of the Act.

¶ 21 A month after *Vaughn* was decided, the Supreme Court reexamined *Schmidt* in *Prichard v. City of Oklahoma City,* 1999 OK 5, 975 P.2d 914. In that case, Oklahoma City police officers arrested Prichard knowing that he had been injured during an attempted burglary. In accordance with a written department policy, the officer took him to an emergency room, where he was diagnosed with a broken jaw and referred to another hospital for treatment. However, instead of taking him to the other hospital, the officer took Prichard to jail, where he remained for three days without treatment. The Supreme Court held that *Schmidt* did not interpret Subsection 6 as a complete bar to liability for all police actions, but was limited to law enforcement actions which were related either to *confinement* or *the method of providing police protection:*

Once Prichard was in police custody and the officer undertook the task of taking Prichard to the emergency room—unlike the circumstances in *Schmidt*—he was not "acting as a police officer in relation to" Prichard.

Here, the police officer's actions were unrelated to the method of providing police protection to the public as referred to in

§ 155(6); nor do Prichard's claims result from either the failure to provide, or the method of providing police protection. Accordingly, we find that the failure to provide the appropriate medical care under these circumstances was not a part of the "method of providing ... police ... protection" as contemplated by § 155(6). *Id.* at ¶¶ 14 & 15, 975 P.2d at 917.

¶ 22 In *Salazar v. City of Oklahoma City,* 1999 OK 20, 976 P.2d 1056, decided a few months later, the Oklahoma Supreme Court reviewed a summary judgment order in favor of the City in a negligence action for wrongful arrest. It again noted that Section 155(6) granted immunity for negligently providing protection, but did not give blanket immunity for carrying out law enforcement duties. It also noted that immunity had been granted in *Schmidt* because that case dealt with "a person in need of protection from harming herself or others. It does not involve negligence in driving but failure to put a passenger under some type of restraint." *Id.* at ¶ 28, 976 P.2d at 1067 (emphasis omitted). It further noted that immunity had been granted in *Shockey v. City of Oklahoma City,* 1981 OK 94, 632 P.2d 406, for failure to provide fire protection. However, the Supreme Court found that immunity was not authorized here because:

> Neither the arresting nor the detaining officer was *in this case* affording *protection* to Salazar. Rather, City employees in charge were acting in the exercise of law enforcement duties. *In short, City rendered general law enforcement services in the context of which Salazar was not a protected subject, but instead an arrested and detained person.* He did not sue for *City's failure to protect him* from himself or from others nor did he press a claim for inadequacy of City's protection against fire. We hence conclude and hold that City is *not* shielded by the § 155(6) immunity ...

*Id.* at ¶ 32, 976 P.2d at 1068 (emphasis in the original).

¶ 23 Similarly, Kruzhkov has essentially sued for the Trooper's failure to protect him from himself and others, claiming that a reasonable person in the officer's position would have foreseen the possibility that an intoxicated person might be injured if forced to park his vehicle and walk. *Salazar* makes it clear that the government and its officers and employees are immune from liability for such conduct or inaction. Accordingly, his second proposition also fails.

## CONCLUSION

¶ 24 We find that the evidence, taken in the light most favorable for Kruzhkov, failed to establish an actionable § 1983 claim. As concerns the state negligence claim, Defendants are immune from liability pursuant to the Government Tort Claims Act. Therefore, we find that the trial court did not abuse its discretion in granting a directed verdict in favor of Defendants, and we AFFIRM.

REIF, J., concurs, and RAPP, V.C.J., concurs specially.

RAPP, V.C.J., specially concurring.

¶ 1 I concur in the Majority's holding that Plaintiff failed to establish a Section 1983 claim. I do agree with the result that the trial court should be affirmed. The stop, the discretionary act if you will, performed by the Trooper was a valid traffic stop, and as such, Plaintiff's restraint ended upon the issuance of traffic tickets. Plaintiff was not found to be intoxicated nor does Plaintiff allege he had measurable amounts of alcohol in his bloodstream sufficient to require invocation of 47 O.S.2001 § 11–906.4.

¶ 2 The events subsequent to the traffic stop were, in my opinion, separate, independent events, occurring well outside the realm of the 400 foot distance to the restaurant, and a part of the normal hazards attendant to walking alongside a busy street. Moreover, the accident occurred at a time and distance far from the traffic stop and the restaurant. Thus, Plaintiff was beyond any zone of risk associated with the Trooper. I would hold that the events involving Plaintiff's accident, after the valid stop, were caused solely by separate, independent, and intervening events coupled with Plaintiff's own negligence and acceptance of a known risk as a pedestrian on a street containing vehicular traffic. Accordingly, I would hold

that the question of immunity is not an issue and its consideration is extraneous.