**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 21, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RUTH SAMUEL, as the personal
representative of the estate of Nathan
Samuel, deceased,

      Plaintiff–Appellant,

v.

CITY OF BROKEN ARROW,
Oklahoma, a municipal corporation;
STEPHEN GARRETT, an individual,

      Defendants–Appellees.

No. 11-5166
(D.C. No. 4:10-CV-00683-GKF-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

Ruth Samuel appeals the district court's grant of summary judgment in favor of

defendants Stephen Garrett and the City of Broken Arrow, Oklahoma. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

## I

The parties are familiar with the facts of this case, which we need not recite in detail here. City of Broken Arrow police officer Stephen Garrett shot and killed Nathan Samuel after responding to a domestic violence call at the Samuels' home. Ruth Samuel, Nathan's wife, brought this action against Garrett and the City under 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151 et seq. The district court granted summary judgment in favor of defendants on all claims. Ruth Samuel now appeals.

## II

We review the district court's grant of summary judgment de novo. Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "[w]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Weigel v. Broad, 544 F.3d 1143, 1151 (10th Cir. 2008) (quotation omitted).

## A

The district court held that Garrett's use of force did not violate the Fourth Amendment and that he was entitled to qualified immunity. To defeat a qualified immunity defense asserted at summary judgment, a plaintiff must advance evidence showing that: "(1) the defendant violated a constitutional right and (2) the constitutional

right was clearly established." Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009) (citation omitted). We have "discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. (quotation omitted). Because we agree with the district court that Garrett's actions did not violate clearly established law, we decline to address the constitutional question.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Klen v. City of Loveland, 661 F.3d 498, 511 (10th Cir. 2011). "Although there does not need to be a prior case with precisely the same facts, our inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (quotation and alterations omitted). "The pertinent question is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. (quotation omitted).

It is well established that the use of "deadly force is justified under the Fourth Amendment if a reasonable officer in the [d]efendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." Walker v. City of Orem, 451 F.3d 1139, 1159 (10th Cir. 2006) (quotation omitted). In assessing the "degree of threat" facing an officer, we consider several factors, including: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were

-3-

made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008).

Applying these factors in Larsen, we held that the use of deadly force was reasonable under circumstances very similar to those at issue in the case at bar. See id. at 1260-61. Although the distance between the officer and the suspect in this case was somewhat greater than in Larsen, the distance between Ruth Samuel and Nathan Samuel was similar to the distance at issue there. Cf. Tennessee v. Garner, 471 U.S. 1, 11 (1985) (use of deadly force may be reasonable if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others"). Moreover, "[o]ur cases decline to adopt a per se rule where distance alone would create a fact question as a matter of law." Larsen, 511 F.3d at 1262 (italicization omitted).

In contrast, the factual circumstances presented in the cases cited by Ruth Samuel differ materially from those before us here. In three of the cases she cites, we held that it was not clear whether the suspect had manifested an intent to harm an officer or bystander on the scene, unlike the facts of this case. See Zia Trust Co. ex rel. Causey v. Montoya, 597 F.3d 1150, 1155 (10th Cir. 2010); Walker, 451 F.3d at 1144; Zuchel v. Spinharney, 890 F.2d 273, 275 (10th Cir. 1989). And in the remaining case she relies upon as clearly establishing that Garrett's actions were unreasonable, Allen v. Muskogee, 119 F.3d 837 (10th Cir. 1997), we affirmed the denial of summary judgment because of a dispute of material fact as to "whether [d]efendants' own reckless or deliberate conduct

-4-

during the seizure unreasonably created the need to use such force," id. at 840 (quotation

omitted), an issue not present in this case.

Finally, it is clear that "some warning" must be given before an officer uses deadly

force if "feasible." Garner, 471 U.S. at 12. We have treated orders to drop a weapon, an

order Garrett provided, as sufficient warning when "[e]vents were unfolding extremely

quickly." Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1311 (10th Cir. 2009). Given this

precedent, there is no indication that Garrett's actions violated clearly established law.

We sympathize with Ruth Samuel's plight. There is no doubt that Nathan

Samuel's death was a regrettable tragedy. But we must recognize that officers are "often

forced to make split-second judgments . . . about the amount of force that is necessary in

a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989). Respecting that

discretion, we conclude that Garrett is entitled to qualified immunity.

**B**

Ruth Samuel also argues that the district court erred in granting the City's motion

for summary judgment on her failure to train claims.[1] She contends that the City is liable

---

[1] The City asserts that Ruth Samuel abandoned her § 1983 failure to train claim. We disagree. The district court considered this claim, and Ruth Samuel's opening brief discusses it at some length. It is also disputed whether Ruth Samuel has stated a separate claim against the City for adopting an unconstitutional policy regarding the use of deadly force. The district court addressed this argument as part of the failure to train claim, and we can find no evidence that Ruth Samuel raised this argument separately below. We therefore do not consider the policy argument separately on appeal. Fogarty v. Gallegos, 523 F.3d 1147, 1156 n.8 (10th Cir. 2008) ("Ordinarily, we do not address issues raised for the first time on appeal . . . .").

for failure to train under § 1983 and under state negligence principles.

To prevail on a failure to train claim under § 1983, a plaintiff must show:

(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact[;] and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

Carr v. Castle, 337 F.3d 1221, 1228 (10th Cir. 2003) (quotation omitted).

Even assuming the first two factors are satisfied, we agree with the district court that this claim fails on the third Carr requirement. A plaintiff establishes deliberate indifference "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." Id. at 1229.

The record establishes that the City provides extensive training on the appropriate use of deadly force, including live firing exercises based on different factual scenarios. Further, the City instructs officers on the need for a verbal warning in compliance with current law, and trains officers on how to respond to domestic disputes. Ruth Samuel's failure to train claim is based entirely on the report of an expert witness. But that report does not articulate the manner in which the City's training fails to comply with established law, it simply offers a conclusory assertion to that effect. Further, the report does not accurately state the content of the City's training program. This evidence is insufficient to create a genuine dispute of material fact as to whether the City was

-6-

deliberately indifferent.

For the same reason, we conclude that summary judgment was proper under a state common law failure to train theory.[2]  To prevail on a negligence claim under Oklahoma law, a plaintiff must prove "the existence of a duty owed by the defendant to the plaintiff to use ordinary care, a breach of that duty, and an injury proximately caused by the defendant's breach of duty."  Comer v. Preferred Risk Mut. Ins. Co., 991 P.2d 1006, 1010 (Okla. 1999).  Although the ordinary care standard is often a question for the jury, the report upon which Ruth Samuel relies wholly fails to create a triable issue as to whether the City failed to exercise reasonable care in training its officers.

## C

Ruth Samuel's final argument is that the City is liable for Garrett's alleged negligence under state tort law under a theory of respondeat superior.  We conclude that the Oklahoma Governmental Tort Claims Act ("OGTCA") provides the City immunity from such claims.

The OGTCA exempts state and political subdivisions from claims that stem from "the failure to provide, or the method of providing, police, law enforcement or fire protection."  Okla. Stat. tit. 51, § 155(6).  The Oklahoma Supreme Court has held that "protection" is the operative word, and that immunity therefore attaches under § 155(6)

---

[2] Although the district court did not conduct a wholly separate analysis of Ruth Samuel's state law failure to train argument, we may affirm on any grounds adequately supported by the record, even grounds not relied upon by the district court.  See Dummar v. Lummis, 543 F.3d 614, 618 (10th Cir. 2008).

when police are providing "protection" as opposed to carrying out a "law enforcement function." Salazar v. City of Okla. City, 976 P.2d 1056, 1066 (Okla. 1999) (italicization omitted).

Under Oklahoma law, "protection" includes actions taken to restrain a suspect "from harming herself or others." Id. at 1067 (italicization omitted); see also Schmidt v. Grady Cnty., 943 P.2d 595, 596, 598 (Okla. 1997) (deputy was immune under § 155(6) because he took plaintiff "into custody to protect her from harming herself or others"). In contrast, an officer is not engaged in a protective function where he carries out an arrest as part of his general "law enforcement activities." Morales v. City of Okla. City ex rel. Okla. City Police Dep't, 230 P.3d 869, 876 (Okla. 2010). The Oklahoma Supreme Court has characterized "actions incident to arrest or imprisonment" as the primary indicators that an action is taken in a law-enforcement rather than a protective capacity. See Salazar, 976 P.2d at 1066. It has declined to apply § 155(6) even when an officer's actions involve both protection and an arrest, holding that to do so "would do away with the distinction between protective services by police and law enforcement activities." Morales, 230 P.3d at 876.

Garrett's "relationship to [the Samuels and their neighbors] was as a municipality carrying out a [police] protection function." Schmidt, 943 P.2d at 598. Garrett was seeking to protect the Samuels and the bystanders, including to "protect [Nathan Samuel] from harming [him]self or others" rather than attempting to arrest him or otherwise carry

-8-

out a law enforcement function. Id. at 596.[3] Because Garrett's use of force was "[]related to the method of providing police protection to the public" rather than to a law enforcement activity such as arresting a suspect, we conclude that the City is entitled to immunity from tort liability under § 155(6). Prichard v. City of Okla. City, 975 P.2d 914, 917 (Okla. 1999).[4]

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[3] Under Oklahoma law, we may look to an officer's subjective intentions to determine whether the action was protective. See Morales, 230 P.3d at 876 (considering whether the officer's role was protective or law enforcement "[f]rom [the officer's] viewpoint").

[4] Before the district court, Ruth Samuel also asserted claims of negligent supervision and retention against the City. She has abandoned these claims on appeal, and thus we do not address them. The City argues that Ruth Samuel failed to plead a respondeat superior negligence claim against the City. Although there may be some merit to this argument, we rely on the immunity ground to affirm.